## CARTE *v.* EVANS and others.

*(Circuit Court, D. Massachusetts. June 21, 1886.)*

1. COPYRIGHT—TRANSFER—RIGHTS OF ALIEN ASSIGNEE—INFRINGEMENT.
   Where a piano-forte arrangement of the orchestral score of an opera was made by a United States citizen, with the consent of the non-resident foreign composers of the opera, and then transferred by him to a fellow-citizen, who procured a copyright, which he assigned to a non-resident foreigner, acting as agent of the original composers of the opera, *held,* that there was nothing of evasion or violation of law, and that the assignee was entitled to the protection of the court against infringers.

2. SAME—VALIDITY—REGISTRATION—TITLE OF BOOK.
   If the published title of a book is sufficient to identify it with substantial certainty with the registered copyright, the copyright will not be forfeited on account of slight variations between the two.

In Equity.
*Causten Browne,* for complainant.
*Prentiss Cummings,* for defendants.

NELSON, J. This case was heard in February last, but the decision has been delayed to enable the parties to complete certain proofs which were found to be necessary for its proper determination, and it is only recently that it has been in a condition to be finally disposed of. The suit is a bill in equity for an injunction to restrain the infringement by the defendants of the plaintiff's copyright in an arrangement or adaptation for the piano-forte of the orchestral score of an opera called "The Mikado, or The Town of Titipu." It appeared that William S. Gilbert and Sir Arthur Sullivan, both British subjects resident in London, were the authors and composers of a comic opera entitled "The Mikado, or The Town of Titipu," the words of the opera

being the work of Gilbert, and the musical parts being composed by
Sullivan. It was admitted that the orchestral score of the opera has
always remained in manuscript, or in print only for the use of the
performers, and has never been published, either in this country or
in England. The piano-forte arrangement for which the plaintiff
holds a copyright was composed by George Lowell Tracy, a profes-
sional composer and arranger of music, residing in Boston, and a
citizen of the United States. The work of composition was per-
formed by Tracy, in London, under an agreement made by him with
Gilbert and Sullivan, and with the plaintiff, who is the representa-
tive of their interests in this country, the latter being also a British
subject resident in London, that a copyright of the piano-forte ar-
rangement, when completed, should be taken out in this country by
Tracy, and transferred to the plaintiff. For his part of the work
Tracy was paid a salary. After the completion of the work, with the
consent of Tracy and the plaintiff, a copyright was taken out here
in the name of Alexander P. Browne, a resident of Boston, and a cit-
izen of the United States, acting as the attorney for all the parties,
and was afterwards, with Tracy's approval, assigned by Browne to
the plaintiff. The original orchestral score, as composed by Sulli-
van, was, of course, designed to be played by numerous performers,
and on a great number and variety of musical instruments, ranging
in compass from the highest to the lowest; and Tracy's work con-
sisted in reducing, condensing, and reconstructing a score composed
for a full orchestra of wind and stringed instruments, and producing
from it a score that could be played by a single performer on an in-
strument of the limited capacity of the piano-forte. The Tracy ar-
rangement was intended to be played as an accompaniment to the
vocal score, and in that respect to take the place of the orchestral
score, as played when the opera was given on the stage.

That an arrangement for the piano-forte of the orchestral score of
an opera, such as Tracy has produced, is an original musical compo-
sition, within the meaning of the copyright law, is well settled. In
executing such a work the ideas of the composer of the opera cannot
be wholly reproduced, and other ideas, more or less resembling them,
or wholly new, have to be substituted and added. To do such a work
acceptably requires musical taste and skill of a high order, and a
thorough knowledge of the art of musical composition, and especially
of instrumentation. No two arrangers, acting independently, and
working from the same original, would do the work in the same way,
or would be likely to produce the same results, except so far as they
might both resemble the original. An arrangement of this charac-
ter would undoubtedly be a piracy of the original opera, unless the
arranger has in some way acquired the right to make such use of the
original; but if he has acquired that right, the arrangement is sub-
stantially a new and distinct composition, and as such is entitled to
the protection of the court. *Wood* v. *Boosey*, L. R. 2 Q. B. 340;

affirmed, L. R. 3 Q. B. 223; *Boosey* v. *Fairlie*, 7 Ch. Div. 301; affirmed, 4 App. Cas. 711; *Thomas* v. *Lennon*, 14 Fed. Rep. 849; Drone, Copyr. 176.

Tracy's work was done with the consent of the original composers of the opera, and in their interest. There is nothing in our copyright law to prevent one of our own citizens from taking out a copyright of an original work composed by him, even though the work of composition was performed at the procurement and in the employment of an alien; or from assigning his copyright to an alien under an agreement made either before or after the composing of the work. A nonresident foreigner is not within our copyright law, but he may take and hold by assignment a copyright granted to one of our own citizens. The proprietor as well as the author is entitled to enter the work for copyright. The consent of Tracy was sufficient to constitute Browne the proprietor for the purpose, without a formal assignment. *Lawrence* v. *Dana*, 4 Cliff. 1, 65. The effect of the transaction was the same as if Tracy had made the entry in his own name, and then assigned to Carte.

The defendants insist that the method of proceeding by which the copyright was procured, and afterwards vested in the plaintiff, a nonresident foreigner, was a mere evasion of our copyright act, and as such is not entitled to the protection of the court. But I am unable to perceive how it can properly be called an evasion, if by that is meant a proceeding by which the letter or spirit of the law is directly or indirectly violated. The thing copyrighted was an original work, by an American composer, and therefore the lawful subject of copyright. All the steps taken to secure the copyright, and vest it in the plaintiff, were authorized by our statute. Undoubtedly the plan adopted displayed great ingenuity, and the effect is to vest in these foreign authors valuable American rights in their work; but there is nothing of evasion or violation of law. The plaintiff is therefore entitled to the protection of the court against infringers, if his copyright is otherwise valid.

Another question in the case relates to the title of the published book. The act provides that no person shall be entitled to a copyright of a book unless he shall, before publication, deliver at the office of the librarian of congress, or deposit in the mail addressed to him, a printed copy of its title, nor unless he shall also, within 10 days from the publication, deliver at the office of the librarian, or deposit in the mail, addressed to him, two complete printed copies of the book, of the best edition issued; and the librarian is required to keep a record of the names of all books entered. Rev. St. §§ 4956, 4957, 4959. The act does not say, in so many words, that the published book shall bear on its title-page the same title as that registered. But as the object of the registration is to give notice to the world that the author or proprietor has acquired the exclusive right of publication, the inference is that by "two complete printed copies"

is meant two printed copies with a title corresponding with the registered title, and that for the purpose of identification the registered title shall be substantially reproduced on the title-page of the published book.

On the eleventh March, 1885, Browne, as proprietor, filed with the librarian of congress a title in these words: "Piano-forte Arrangement of the Comic Opera, The Mikado, or The Town of Titipu, by W. S. Gilbert and Sir Arthur Sullivan. By George L. Tracy." On the twentieth April, 1885, the publishers delivered at the office of the librarian two copies of the printed book, which contained the piano-forte arrangement of Tracy, and on another staff the vocal score of the original opera to which the arrangement was an accompaniment, and also contained the songs of the opera, and had this title: "Vocal Score of The Mikado, or The Town of Titipu. Arrangement for Piano-forte, by George Lowell Tracy, (of Boston, U. S. A.,) of the above-named opera by W. S. Gilbert and Arthur Sullivan." They also, on the same date, made deposit in the librarian's office of a title corresponding with that on the title-page. Subsequently another edition was issued, containing the piano-forte arrangement and vocal score on the same staff, but without the songs, and bearing the same title as the first edition, except that the words "Piano-forte Score" were substituted for the words "Vocal Score." Two copies and a corresponding title were deposited on the tenth June, 1885.

The plaintiff does not rely on the titles entered April 20th and June 10th, which, it appears, were filed by the publishers without authority; but he rests his claim on the title entered March 11th, and the deposit of the books made April 20th. The defendants deny that the title of the book is the same as that named in the copyright of March 11th. But it seems clear that there is no such substantial difference between them as would justify the court in declaring the plaintiff's copyright forfeited on that account. The published title indicates with perfect certainty that the musical work contained in it is an arrangement for the piano-forte, composed by Tracy, of Gilbert & Sullivan's opera entitled "The Mikado, or The Town of Titipu," which is what was copyrighted. The only value of the arrangement was in its connection with the vocal score, and they must necessarily be published together, and some slight addition to the title of the book would be allowable on that account. The published title is sufficient to identify it with substantial certainty with the registered copyright, and no one could possibly be misled by the variations between the two.

The defendants, who are music dealers in Boston, were selling, when this bill was filed, a book of their own publication, entitled "Vocal Gems from the Mikado, or The Town of Titipu," which contains the songs and vocal score of the opera, and a piano-forte accompaniment composed by George E. Jackson, of Boston. On this part of the case it is only necessary to remark that it was clearly

proved at the hearing, by the testimony of musical experts of the highest authority, that Jackson's accompaniment is nothing but an ill-disguised imitation of the Tracy arrangement.

The conclusion is that the plaintiff has a valid copyright under our law, and is entitled to an injunction to restrain the defendants from infringing it.   So ordered.