## WERCKMEISTER v. SPRINGER LITHOGRAPHING CO.

(Circuit Court, S. D. New York.    October 4, 1894.)

1. COPYRIGHT—NOTICE—NAME OF PARTY.
    The name "Photographische Gesellschaft" (Photographic Company), being the trade-name created by the owner of a copyright, and extensively used by him for many years in his business, is a sufficient designation of the party by whom the copyright is taken out.

2. SAME—RESIDENCE.
    The residence of the party taking out a copyright, though a foreigner, need not be stated in the notice.

3. SAME—SALE OF PAINTING—RESERVING COPYRIGHT.
    A sale by an author of his painting, reserving the right of reproduction, does not destroy his right of copyright.  The purchaser in such case is not a "proprietor," within the copyright law.

4. SAME—PUBLICATION—SALE OF REPLICA.
    The right of copyright of a painting is not destroyed by a sale of a replica, or original study or model, differing from the painting in size and style, especially where the right of reproduction is reserved on such sale.

5. SAME—CATALOGUE COPY.
    The printing in a salon catalogue, without notice of copyright, of a mere crayon sketch of a painting exhibited in the salon, not intended in any way to serve as a copy of the painting, is not a publication which will work a forfeiture of the right to copyright.

6. SAME—PUBLIC EXHIBIT.
    An exhibition of a painting in a public salon is not a publication working a forfeiture of the right of copyright unless the general public is permitted to make copies at pleasure, and such permission will not be assumed in the absence of direct evidence.

This was a suit by Emil Werckmeister against the Springer Lithographing Company for infringement of copyright.

Goepel & Raegener, for complainant.
Boothby & Warren, for defendant.

TOWNSEND, District Judge. This is a bill in equity for the infringement of a copyright. The complainant is a resident of Germany, and has been for many years engaged in the business, under the name of "Photographische Gesellschaft," of publishing copies of paintings after obtaining the rights of publication from the authors. The name "Photographische Gesellschaft" has existed since 1862, and complainant has been the sole proprietor of the business carried on under that name since 1872. It is implied in the testimony that others were associated with him before 1872, but there is no direct evidence on that point. It is not claimed that any other person or persons have done business under said name since 1872. Prior to May, 1892, Edouard Bisson, an artist, made a painting called "Floreal." The painting is an original, artistic representation of the half-length figure of a girl, with flowers falling on her head and lap. In May, 1892, he exhibited the painting in the salon at the Palais de l'Industrie, in the Champs-Elysees, in Paris. While there, he sold the painting, reserving all rights of reproduction. Afterwards, he verbally assigned the exclusive right of reproduction, publication, and copyright, of said painting to the complainant, and confirmed the same by written instrument on July 13, 1892. In June, 1892, he sold to another person the replica or original study or model, which was not in the same style or size as the finished painting, telling the purchaser that all rights of reproduction were reserved. The price paid by complainant for the rights purchased by him was 1,500 francs. Defendant is a lithographic company, and has infringed the copyright by making lithographs of the painting. The points made by defendant's counsel will be considered in their order.

The first objection urged is that the copyright notice, "Copyright, 1882, by Photographische Gesellschaft," is insufficient, because it does not contain the name of the person taking out the copyright. The statute (Act June 18, 1874, c. 301) provides as follows:

"That no person shall maintain an action for the infringement of his copyright unless he shall give notice thereof, * * * if a photograph, * * * by inscribing upon some visible portion thereof the word 'Copyright,' together with the year the copyright was entered, and the name of the party by whom it was taken out."

The earlier statutes, which provided for the use of the words "Entered according to act of congress," etc., did not contain the above limitation, "the name of the party by whom it was taken out." This clause seems to have been added for the purpose of preventing any ambiguity as to the character of the notice which should accompany the use of the word "Copyright." The object of the statute was to notify the public of the claim of copyright, and to enable it to ascertain the "party" by whom it was taken out. In this case the party was the Photographische Gesellschaft, or Photographic Company, said name being the trade-name created by complainant, and extensively used by him in his business for many

years. In Scribner v. Henry G. Allen Co., 49 Fed. 854, it appeared that Charles Scribner was at one time doing business under the name of Charles Scribner's Sons, and that during this period he bought the right to obtain a copyright upon a certain book, and did the various acts required to copyright said book, in the name of "Charles Scribner's Sons." Judge Shipman held the notice sufficient. He says:

"At common law, individuals are permitted to carry on business under any name or style which they may choose to adopt; and, if persons trade or carry on business under a name, style, or firm, whatever may be done by them under that name is as valid as if real names had been used."

The principle there stated is applicable to the present case. I think said notice is sufficient.

The residence of the party is not required to be stated, and, if any person in America desires to ascertain who claims the copyright of this painting, he will much more readily succeed if informed that the owner is Photographische Gesellschaft, than if he is informed that it is Emil Werckmeister. Lithographic Co.. v. Sarony, 111 U. S. 53, 4 Sup. Ct. 279; Black v. Henry G. Allen Co., 42 Fed. 618; Carte v. Evans; 27 Fed. 861.

Defendant next insists that complainant is neither the author, inventor, designer, or proprietor of the painting, nor the assign of any such person, within the meaning of the statute. The objection presents the novel question whether, under the statute, the artist could sell the painting to one person, and the right to obtain the copyright to another. It is claimed by the defendant that a copyright can only be obtained by the proprietor of the painting, and that, after the author had parted with the right of property in the painting, he could have no right of copyright remaining; that, until the copyright is actually taken out, the right of property in the painting and the right of copyright are inseparable; that, after the sale of the painting, the purchaser was the only person who had the right to copyright it, or to transfer any right of reproduction or copyright. This raises a question as to the meaning of the word "proprietor" in the statute. The intellectual conceptions of an author are his absolute property. He may hold them captive in his brain, or he may release them, and express them by outward signs. In the latter case the common law protects him against duplication or publication by any other parties without his consent; but, if he sets them free by unrestricted publication, he abandons his property in them to the public. The law undertakes to encourage the publication of works of this character by providing that upon certain conditions no one but the author, or one deriving the right from him, shall have the liberty of publishing or copying his works for a certain time. The copyright thus secured to an author by statute is an incorporeal right, not a corporeal thing. At the same time it is property capable of being assigned by the author at his pleasure. It cannot, like tangible property, be made the subject of seizure and sale on execution. The sale of this painting on execution, for instance, would not pass the title to the copyright, even if the copyright had been taken out before

such sale. Ager v. Murray, 105 U. S. 126; Stephens v. Cady, 14 How. 531. It will not be denied that either the author or any unconditional purchaser of the painting might have originally copyrighted the painting, and then sold it, either retaining the copyright or selling it to another purchaser. The statute manifestly does not intend to vest the right to a copyright in two persons. When there is a "proprietor" of a painting, within the meaning of the statute, the right of the author must cease. Did the purchaser in this case become the "proprietor," within the meaning of the statute? I think not. I think by "proprietor," in this statute, is intended the person who not only obtains the right to physical possession of the painting, but the common-law rights of publication or preventing publication which belong to the author. I do not think that these common-law rights absolutely and of necessity accompany the title to the canvas and coloring matter which constitute the painting. In Parton v. Prang, 3 Cliff. 537, Fed. Cas. No. 10,784, it is said that "the author or proprietor of a manuscript or picture possesses that right [to sell and transfer the same] as fully and to the same extent as the owner of any other personal property. The sales may be absolute or conditional, and they may be with or without qualifications, limitations, and restrictions." And this case throughout implies that there may be a transfer of the painting itself without the common-law rights of publishing or restricting publication. The opinion in Stephens v. Cady, 14 How. 529, strongly sustains this view. Drone, Copyr. 240. "No disposition—no transfer—of paper upon which the composition was written or impressed (though it gives the power to print and publish) can be construed a conveyance of the copy without the author's express consent to print or publish, much less against his will." Millar v. Taylor, 4 Burrows, 2396. "Copy," in above quotation, seems to signify the common-law rights of the author. The case of Yuengling v. Schile, 12 Fed. 97, implies throughout that the ownership of the painting itself does not necessarily carry with it the right to copyright. If, then, the purchaser of this painting, without the right of reproduction, did not become the owner of the right to copyright, the right was destroyed or remained in the author. According to the literal words of the statute, he still had this right. He was the author of the painting, and there was no proprietor or assign. He retained the common-law right to prevent publication, or he could give it to the public. He, and he only, could furnish the consideration—the publication—in return for which the public confers the right of copyright. Unless he could have a copyright, the right was destroyed, and the benefit the public might receive from a duplication of the painting was lost. Such a limitation of the right of copyright would tend to defeat the liberal purposes of the statute. The purchaser of a work of art is not ordinarily the one who cares to make or sell copies thereof. The purchaser of a drama may not care to engage in the publication of the manuscript, and yet, if the author may not dispose of his separate and distinctive rights to separate persons, both he and the public will be deprived of the benefit which arises from the exchange of his common-law rights for the

rights given by the statute. I can see no inconvenience and no violation of principle in allowing the author to sell his painting, and retain the right to copyright, any more than in allowing an inventor to sell his model, or to make his first machine for another person, and still retain the right to patent his invention.

Defendant claims, thirdly, that the sale of the replica was a publication by the author which destroyed the right to copyright. The sale of the replica was made subsequent to the oral transfer of the rights of reduplication which gave the right to a copyright. But, if it be necessary that these rights be assigned by writing (which was not done in this case until later), the replica was not a copy of the painting, but was made before the painting, for assistance to the author in producing the painting. It differed from the painting in size and style, and was itself an original painting, of which the author had the common-law right to prevent a reproduction. It was sold by him, reserving any right of reduplication, and such a sale was not a publication even of the replica, and certainly not of the painting.

Defendant next says that there was a publication of a copy of the painting in the salon catalogue, without a copyright notice, and before the taking out of a copyright. This was an illustration not taken from the painting, but from a very superficial crayon sketch printed in the catalogue of the salon where the painting was exhibited prior to the assignment to the complainant. It was not intended to be a copy of the painting. The purpose of the catalogue was merely to furnish to the holder of the catalogue information regarding the paintings, or to enable him to find the paintings desired, and perhaps to recall the paintings to the memory afterwards. It was not intended to serve in any way as a copy of the painting. No one would think of considering it as a work of art. Such a printing would at most be a qualified or limited publication, which would not work a forfeiture of the right of copyright. Such use of catalogue is under the implied qualification that the privilege shall not be extended beyond the purpose for which it was granted. In Falk v. Engraving Co., 4 C. C. A. 648, 54 Fed. 890, a publisher sent to retail dealers an exhibition card containing copies, in very reduced sizes, of photographs, from which the dealers were requested to make their orders. The card did not contain the copyright notice in the language prescribed by statute. Judge Shipman says:

"This card or sheet of miniature copies of photographs for the inspection of dealers is not one of the published editions of the photographs which it contained, within the meaning of this section. The statute refers to a published edition, which is an edition offered to the public for sale or circulation."

Defendant has not claimed that the exhibition of the painting in the salon at Paris was a publication, so that it is unnecessary to decide that point. It would seem that such an exhibition would not be a publication unless the general public was permitted to make copies at pleasure. In the absence of direct evidence, such permission will not be assumed. It would seem that such exhibition of the painting and use of the catalogue were under an implied quali-

fication that the use should not be extended beyond the purpose for which it was granted, and that such special use did not constitute publication. See Parton v. Prang, 3 Cliff. 549, Fed. Cas. No. 10,784; Abernethy v. Hutchinson, 1 Hall & T. 28; Drone, Copyr. 287; Bart-lette v. Crittenden, 4 McLean, 300, Fed. Cas. No. 1,082; Kiernan v. Telegraph Co., 50 How. Pr. 201; Tompkins v. Halleck, 133 Mass. 32.

Lastly, defendant says that there is no direct evidence that their lithographs were copied from the painting. In the absence of any evidence whatever on the part of the defendant, the proof offered by the complainant is sufficient.

Let there be the usual decree for an injunction and an accounting.