## FALK v. GAST LITHOGRAPH & ENGRAVING CO., Limited.

(Circuit Court of Appeals, Second Circuit. February 7. 1893.)

1. COPYRIGHT—HOW LOST—"PUBLICATION."

The proprietor of a copyrighted photograph may, without losing his copyright, use a card containing 100 miniature samples of different copyrighted photographs which has not the word "copyright" impressed thereon, for the sole purpose of enabling dealers to give orders. Such a use is not a publication, within the meaning of the copyright laws.

2. SAME—INFRINGEMENT.

One who reproduces a copyrighted photograph cannot escape liability as an infringer by merely showing that the copy which he reproduced did not bear the notice of copyright when he purchased it, but he must also show that it bore no notice when it left the custody of the owner of the copyright. 48 Fed. Rep. 262, affirmed.

3. SAME— INFRINGEMENT—ACCOUNTING.
    The right to an account of profits is incident to the right to an injunction, under Rev. St. § 4970, in copyright cases. Belford v. Scribner, 12 Sup. Ct. Rep. 734, 144 U. S. 488, followed.

4. TRIAL—OBJECTIONS TO EVIDENCE—WAIVER.
    Defendant moved to strike out certain testimony "unless the contract is produced and offered in evidence." Subsequently plaintiff, without proving execution, offered the contract, and defendant objected solely on the ground of incompetency and immateriality. *Held*, that proof of execution was waived.

Appeal from the Circuit Court of the United States for the Southern District of New York.

In Equity. Suit by Benjamin J. Falk against the Gast Lithograph & Engraving Company for infringement of copyright. The circuit court gave complainant a decree. 48 Fed Rep. 262. Defendant appeals. Affirmed.

William B. Ellison and Charles C. Gill, for appellant.
Rowland Cox and Isaac N. Falk, for appellee.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. This is an appeal from a decree of the circuit court for the southern district of New York upon a bill in equity for the infringement of the complainant's copyright in a photograph of Miss Julia Marlowe. The decree sustained the complainant's bill, and directed an injunction and an accounting. The complainant was the author of the photograph in question, which is known by the title of "No. Ninety-Four of Julia Marlowe," and which, with about 100 other different photographs of the same actress, was taken by the complainant under a contract with Miss Marlowe whereby he became proprietor of the various photographs of her which he took. The contract was offered in evidence by the complainant on April 21, 1891. Its execution was not proved. The defendant had moved on March 25, 1891, to strike out a certain clause of the complainant's testimony "unless the contract be subsequently produced and offered in evidence." When it was offered, the defendant objected only upon the ground that the evidence was incompetent and immaterial. The admission of the contract is now objected to because its execution was not proved. This objection was waived.

The facts in regard to the originality of the photograph, its intellectual production as the result of thought and conception on the part of the author, are substantially the same as those in the case of Lithographic Co. v. Sarony, 111 U. S. 53, 4 Sup. Ct. Rep. 279, upon which the supreme court decided that the photograph which was the subject of that suit was an original work of art, and that exclusive rights were properly secured to its author by the statutes of the United States. The proper title of the photograph was deposited by the complainant, as proprietor, in the office of the librarian of congress, on September 17, 1888, and before publication. On December 6, 1888, he delivered at the office of the librarian two printed copies of the photograph described in the title, and which were iden-

tical with the subject of this suit. The proof of identity, in addition to the proof afforded by the librarian's ordinary certificate of the deposit, was furnished by the testimony of a witness who had inspected one copy, marked "No. 2," in the office of the librarian.

The defendant's assignments of error are numerous, but it principally relies upon the alleged inability of the complainant to sustain the affirmative upon two questions of fact. These are: (1) That the complainant, before the commencement of the suit, gave notice of his copyright by printing upon a visible portion of the several copies thereof, which had then been published, the notice which the statute requires; and (2) that copies of the photograph were deposited in the office of the librarian before the expiration of 10 days from the date of the publication.

The first question is the one upon which the defendant has offered the most substantial testimony. Upon each point it has introduced the testimony of a former employe of the complainant, which, for reasons abundantly disclosed in the record, is entirely discredited. Mr. Gray, the treasurer of the defendant, testifies that he bought a copy of the photograph No. 94, which was subsequently reproduced by the defendant, with some modifications, in large lithographic form, for the use of a Philadelphia company, on a Saturday afternoon in February, 1889, at the store of one Ritzmann, who was the principal retail dealer in celebrity photographs in New York; that he bought other photographs at the same time, and that no copyright notice appeared upon any of his purchases; and that he carefully examined each, because he knew the consequences of an unlawful use of a copyrighted photograph. Mr. Medairy, the artist who made the sketch from which the lithograph was produced, testifies that the photograph did not contain the notice of copyright. The photograph which was thus purchased and used has been lost.

The testimony of the artist, who, at the time he used the photograph, was making about 25 similar sketches per month for a period of a year, and who is testifying from his recollection of this particular photograph, does not carry much weight with it. Much reliance could be safely placed upon the testimony of Mr. Gray, but for the fact that in two affidavits—one to be used upon the motion for preliminary injunction in this case, and one to be used in a Philadelphia case—he testified that he bought the photograph in his own office from some one of the dealers who called there almost daily to sell such goods, but whose name he did not remember. This discrepancy diminishes seriously the value to be placed upon his testimony, while its honesty is not questioned. Instances were produced of mistakes in the mounting of other copyrighted photographs in the complainant's gallery. The mistakes of importance were in cases where different photographs of the same person, some copyrighted and others not copyrighted, had been mounted, and the proper distinction in regard to the notice of copyright had not always been made by the work people in the mounting room. The testimony for the complainant is clear that special care was taken with the Marlowe photographs, by reason of the terms of the contract, and the fact that each separate photograph was copyrighted, and that only

one mistake had been known, which was discovered before the photograph went out of the complainant's establishment. The testimony satisfies us that all the copies of No. 94, including the one which was purchased by Mr. Gray, left the shop of the complainant with the proper copyright notice properly inscribed upon the face of the substance upon which the same were mounted. If the proper statutory notice of copyright was upon each copy as it left the control and ownership of the proprietor of the copyright, he cannot be responsible for any changes which were afterwards improvidently made upon a particular copy before it came into the hands of the last purchaser.

In January, 1889, the complainant sent around to the retail dealers an exhibition card or sheet containing copies, in very reduced size, of nearly 100 different photographs of Julia Marlowe. From this card the dealers were to order the particular cabinet photographs which they desired to purchase. The card announced the fact that the photographs were copyrighted, but not in the language which the statute prescribes. The defendant claims that, by the circulation of this card, copies of photograph No. 94 were distributed which did not bear the required notice of copyright, and that consequently this suit cannot be maintained. Section 4962 requires a proprietor, as a prerequisite to an action for the infringement of a copyright, to give notice thereof by inserting in the several copies of every edition published, on the title page, or the page immediately following, if it be a book, or, if a photograph, by inscribing on some portion of the face or front thereof, or on the faces of the substance on which the same shall be mounted, the notice of copyright. This card or sheet of miniature copies of photographs for the inspection of dealers is not one of the published editions of the photographs which it contained, within the meaning of the section. The statutes refer to a published edition, which is an edition offered to the public for sale or circulation. An exhibition of a card of miniature samples to the dealers alone, for the purpose of enabling them to give orders, is not a published edition, within the meaning of the statute.

Upon the second point there is very little to cast doubt upon the positive testimony of the complainant's manager. Miss Marlowe sat for No. 94, and about 20 or 25 other photographs, during the latter half of the month of September, 1888. They were numbered consecutively, ending with No. 105. When the usual order for a dozen pictures is given, about two weeks generally elapses after the sitting before the photographs are delivered. Professional pictures, orders for which have not been given, are sometimes delayed, as they have to await the prior finishing of pictures which have been ordered. It is therefore difficult to surmise when No. 94, and its associate numbers, were, in the usual course of business, probably delivered. Miss Marlowe's testimony, that she saw photographs of herself, including No. 94, in an exhibition frame, in Washington, on November 5th, and that she received some in the latter part of November in New York, is unreliable. Her knowledge of the fact that No. 94 was among the number which she saw or received is manifestly uncertain. If her testimony was convincing, we should be called upon to examine and

decide the question of law, whether an exhibition of a photograph for the purpose only of exhibition, and not for sale, and the delivery of photographs to the sitter in accordance with the contract between her and the author, but not for sale, constituted a publication. The only satisfactory evidence is that, as soon as the photographs known as "No. 94" were completed, two copies were sent to the librarian. Upon this state of facts, an examination of the proper conclusions of law from another set of facts becomes not only needless, but unprofitable

The appellant claims that a decree for an accounting is erroneous, because the only pecuniary remedy which has been provided by statute for the author is an action at law for a forfeiture, and for a penalty. Section 4970 confers upon circuit courts the power, upon bill in equity, to grant injunctions to prevent the violation of rights secured by the laws respecting copyrights. "The right to an account of profits is incident to the right to an injunction in copy and patent right cases." Stevens v. Gladding, 17 How. 447; Belford v. Scribner, 144 U. S. 488, 12 Sup. Ct. Rep. 734.

The other assignments of errors do not call for any comment. The decree of the circuit court is affirmed.