## BARRY v. HUGHES et al.
### No. 12.

Circuit Court of Appeals, Second Circuit.
April 17, 1939.

L. A. Janney, of New York City (Joseph F. Sharp and Glen N. W. McNaughton, both of New York City, of counsel), for appellant.

O'Brien, Driscoll & Raftery, of New York City (Arthur F. Driscoll, and Paul D. O'Brien, both of New York City, of counsel), for appellees.

Before L. HAND, CLARK, and PATTERSON, Circuit Judges.

### PER CURIAM.

The question is whether the defendants were plagiarists of the plaintiff, Barry's, story. The theory is that Mackay saw it, and made it the basis of his play, which the defendants bought and used for one incident of their film. Several questions arise: (1) whether Mackay copied Barry's story at all; (2) if he did, whether the defendants are chargeable with his use of it; (3) if Mackay copied it, and they followed him, whether they took more than Barry's "idea", as contrasted with its expression. It has been held that one who copies from a plagiarist is himself necessarily a plagiarist, however innocent he may be (American Press Ass'n v. Daily Story Publishing Co., 7 Cir., 120 F. 766), but that would be a harsh result, and contrary to the general doctrine of torts. The wrong is copying; that is, using the author's work as a source. A copy of a copy does indeed do just that, but one is ordinarily liable for only those consequences of one's acts which a reasonable person would anticipate. Laying aside a possible action for unjust enrichment, or for an injunction after discovery, we should hesitate a long while before holding that the use of material, apparently in the public demesne, subjected the user to damages, unless something put him actually on notice. There is really nothing of that sort in this record, unless we count the fact that Mackay had sold his play first to Sainpolis, and afterwards to the defendants. That was not creditable, but it did not prove that Mackay stole it from some undisclosed third person. However, as we agree with the district judge that he has not been shown to have copied Barry's story at all, we shall leave the point for decision when it arises.

Aside from Hards's testimony there is no direct evidence that he did copy it; and the judge, who saw and heard Hards, did not believe him. After an interval of over eighteen years it was not unreasonable that he should be incredulous of Hards's recollection of Mackay's casual and trivial remark. There can be no doubt that the D'Estrampes story was current in

Cuba at about the time Mackay and George were there, early in 1916; this is put beyond the faintest question by the copy in the New Orleans newspaper, and the testimony of the Cuban witnesses. We have the word of Mackay and George that D'-Estrampes then told it to them, and, while neither of them was perhaps a very persuasive witness, George, at least, had no reason to fabricate. In the absence of good reason to disbelieve them, we do not see why we should do so. There is no such reason. The plaintiff's argument rests upon certain similarities in the working out of the D'Estrampes skeleton, thought to be so close as to prove that Mackay could not have come upon them spontaneously. We are quite unpersuaded. The fact that in all the versions except D'Estrampes's the lads are left alone, to bring out the weakness of the one as a dramatic foil for the strength of the other, proves nothing .at all; it was a most obvious dramatic device, and could scarcely be monopolised anyway. The two dialogues have no resemblance, except as their substance made that inevitable, given D'Estrampes's outline. It is true, as the district judge said, that it is impossible to demonstrate that Mackay did not copy the story; but Barry has not proved that he did, and we do not believe that he did. The eleventh hour effort to base the case upon a piracy of Barry's second story, Ching Li, adds nothing new.

Decree affirmed.