## ACOSTA v. BROWN et al.

District Court, S. D. New York.

July 16, 1943.

Austrian & Lance and Carl J. Austrian, all of New York City, for plaintiff.

Howard E. Reinheimer, of New York City, for defendant Brown.

McCauley and Henry and Alfred Wasserstrom, all of New York City, for defendant Hearst.

RIFKIND, District Judge.

The life of Clara Barton, founder of the American Red Cross, is the subject matter of an uncopyrighted and unpublished screen play, entitled "Angels in Service," completed by plaintiff on September 1, 1940, and registered by her on September 9, 1940, at the offices of the Screen Writers' Guild in Hollywood, California. The same life story is the subject matter of an unpublished book entitled "Dedicated to Life," completed by defendant Brown in September, 1941. In the issue of March, 1942, of the Cosmopoli-

tan Magazine, defendant Hearst published a "Digest" of defendant Brown's book under the title "War Nurse—The Biography of Clara Barton".

I have no doubt whatever that defendant Brown had access to plaintiff's story, directly or indirectly; directly through Markey whom she failed to call as a witness, in the face of testimony clearly marking him as the probable channel through which access was provided; or indirectly, through one or more of her numerous assistants, of varying degrees of literacy, whom she employed in what she euphemistically called "research".

I am equally certain that she copied. Her stout denials necessarily dissolve in the presence of the internal evidence which is so overwhelming as to exclude coincidence almost to a mathematical certainty. Both screen play and book contain the following characters: Tom Maxwell, Elisha Richards, Mather Richards, Eddie Johnson, Henry Adams, Arthur Holt and Eyra Jenks. All are fictional characters and names, the invention of plaintiff. "Eyra" is the product of a mistyping by plaintiff of the name "Ezra". In both screen play and book the Kelly steel patent is identified as the clue through which Miss Barton discovers misconduct in the patent office; in both, February 3 is the date assigned for Maxwell's death. It is utterly incredible that coincidence can explain defendant Brown's use of these fictional names and incidents invented by plaintiff.

It may well be that defendant Brown mistook plaintiff's fiction for fact; and when she copied she took what she believed to be in the public domain. Her research was chiefly concerned with the hunt for dramatic situations rather than for historical accuracy. There is no doubt, however, that she copied, and since we must ascribe to her the intentions of her assistants, that she intended to copy. The selections she made were "made animo furandi, with intent to make use of them for the same purpose for which the original author used them." Farmer v. Elstner, C.C.E.D.Mich., 1888, 33 F. 494, 496.

Both plaintiff and defendant Brown were confronted by the problem that the life of Clara Barton presented an inadequate "love interest" to meet the demands of the market they hoped to reach. Plaintiff supplied the lack by inventing a lover. She placed him at the scene of Miss Bar-

ton's activities in the early stages of her life and caused him to participate in events which constitute part of the authenticated life story of her heroine. The natural result is an amalgam of fact and fiction. To illustrate: some one who had gone to the California gold fields bequeathed to Miss Barton a legacy of $10,000. Plaintiff ascribes this act to her invented suitor, Tom Maxwell. Defendant Brown does likewise. The historical fact of the legacy does not excuse the plagiarism of plaintiff's invention. More is here involved than the mere taking of the name of a character. Plaintiff can claim no literary property in the idea that a Clara Barton loved a Tom Maxwell; but plaintiff may obtain protection against defendant's copying her story of the love of the Clara Barton for the Tom Maxwell whom plaintiff invented.

■ True, the plagiarized portion represents a small part of the accused book; but it is not an insignificant part in the development of the story. In any event, that consideration will present a problem on the accounting, to be settled in accordance with the principles of Sheldon v. Metro-Goldwyn Pictures Corp., 1940, 309 U.S. 390, 60 S.Ct. 681, 84 L.Ed. 825. In order to establish liability, which is all that concerns us here, it is sufficient that the portion copied is a substantial part of the plaintiff's screen play—and that it certainly is. Defendant Brown has taken more than plaintiff's idea. By an admixture of fact and fiction plaintiff has created a fully developed romance in the life of Clara Barton; she localized it in Bordentown, where Miss Barton actually resided; she named the lover Tom Maxwell and made him Miss Barton's champion in her fight for free schooling—a cause she actually espoused; she identified this suitor as the donor of the $10,000—which in fact she received from some one; she caused the legacy to be transmitted with a letter from Miss Barton's brother announcing the sudden and premature death of her benefactor. The letter is fiction. All this and more defendant Brown copied. Against such plagiarism plaintiff is entitled to injuctive relief and she is likewise entitled to an accounting.

The quantity of material copied from plaintiff's script into the magazine published by defendant Hearst is much smaller; but it is not different in kind. The Barton-Maxwell romance is developed and it is concluded on the same note of pathos

struck by the letter from Miss Barton's brother announcing the death of the lover.

Defendant Hearst relies upon its innocence, which it has established. In Barry v. Hughes, 2 Cir., 1939, 103 F.2d 427, certiorari denied 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505, the Court of Appeals expressed the view that a rule which would impose liability upon one who innocently copied from a plagiarist would produce a harsh result; but the court refrained from deciding the point. Since then Judge Bondy held in Chappell & Co., Inc., v. Costa, D.C.S.D.N.Y.,1942, 45 F.Supp. 554, that innocence was immaterial in an action under the copyright law. I am persuaded that I should follow him until the circuit court settles the question. The Chappell case was, of course, decided under federal law whereas the case at bar, where jurisdiction is founded on diversity of citizenship, is governed by New York law. However, nothing has been called to my attention indicating that New York has a different rule.

Fendler v. Morosco, 1930, 253 N.Y. 281, 171 N.E. 56, quotes, apparently with approval, a passage from Augustine Birrell, Copyright in Books, page 169, suggesting the requirement of "felonious intention". But the court was there concerned with another problem.

I conclude that plaintiff is entitled to a decree against defendant Hearst as well.

Decree for plaintiff against both defendants.