**PETER PAN FABRICS, INC. and Henry Glass & Co., Plaintiffs,**

v.

**ACADIA COMPANY, Inc., Defendant.**

**PETER PAN FABRICS, INC., and Henry Glass & Co., Plaintiffs,**

v.

**MARTIN WEINER CORP., Defendant.**

United States District Court
S. D. New York.

March 23, 1959.

Helfat & Helfat, New York City, for plaintiffs, Bernard A. Helfat, New York City, of counsel.

Ruben Schwartz, New York City, for defendant Acadia Company, Inc., Robert W. Adler, New York City, of counsel.

Frederick E. M. Ballon, New York City, for defendant Martin Weiner Corp., Samuel J. Stoll, Jamaica, N. Y., of counsel.

HERLANDS, District Judge.

Plaintiffs, Peter Pan Fabrics, Inc. and Henry Glass & Co. (hereinafter "Peter Pan" and "Glass," respectively), have moved for a preliminary injunction in two separate actions against two different defendants: Civil Action 140–268, instituted against Martin Weiner Corp. (hereinafter "Weiner") and Civil Action 140–266, instituted against The Acadia Company, Inc. (hereinafter Acadia). Plaintiffs claim that two of plaintiffs' textile fabric design copyrights—identified as "Byzantium" and "Grecian Glory" —have been infringed, that is, Weiner has infringed Byzantium and Acadia has infringed Byzantium and Grecian Glory.

The relief afforded by Title 17 U.S.C.A. §§ 101(a) and 112, is sought by plaintiffs to preliminarily enjoin defendants from manufacturing, selling and delivering printed textiles that allegedly bear a copied reproduction of plaintiffs' copyrighted designs. Jurisdiction under title 28 U.S.C.A. § 1338, to grant injunctions against violation of a copyright, is vested in the district courts by Title 17 U.S.C.A. § 112.

Because both motions involve common questions of law and fact, they will be considered together.

Plaintiffs allege that original works of art entitled Style 680, Range 1, Byzantium (hereinafter "Byzantium"), and Style 680, Range 11, Grecian Glory (hereinafter "Grecian Glory"), were created by Pierre Kittler Studio in Paris, France; that the original designs were sold to Peter Pan; that these original works of art were reproduced as a design for textiles, and as such were submitted after satisfying all the requirements of the Copyright Laws (Act of July 30, 1947, c. 391, sec. 1; 61 Stat. 652; 17 U.S.C.A. §§ 1–32); and that a certificate of copyright was duly issued to Peter Pan for Byzantium (Certificate No. H 7290, dated July 9, 1958) and for Grecian Glory (Certificate No. H 7218, dated July 9, 1958).

Other infringement actions have been instituted against other defendants by the plaintiffs in this District to protect the copyrighted Byzantium design. In an action against Dixon Textile Corporation (Civil Action 140–109), District Judge Bryan, without opinion, granted plaintiffs' motion for a preliminary injunction. Subsequently, in an action against Brenda Fabrics, Inc. (Civil Action 140–267), District Judge Dimock also granted plaintiffs preliminary injunctive relief. Peter Pan Fabrics, Inc. v. Brenda Fabrics, Inc., D.C.S.D.N.Y. 1959, 169 F.Supp. 142.

Inasmuch as the defendants in the proceedings at bar have raised certain issues not presented by the defendants in the prior cases, it has become necessary to deal with these matters comprehensively.

Defendant Weiner argues: (1) that neither plaintiff has the requisite standing to bring a copyright infringement action; (2) that the defendant's accused design is not an infringing copy of the plaintiffs' copyrighted design; (3) that the dress made of plaintiffs' fabrics which defendant allegedly copied bore no copyright notice; (4) that the plaintiffs' copyright is invalid because the plaintiffs' design was published with insufficient copyright notice; (5) that the wrong defendant has been sued; and (6) that the alleged infringement ceased promptly upon notice given by plaintiffs.

Defendant Acadia argues: (1) that the copyrights should not have been granted to plaintiffs because the designs

were lacking in originality; (2) that, if *arguendo* the copyrights are valid, the plaintiffs' failure to provide proper notice of copyright on the ultimate products (i. e., dresses) that embody the plaintiffs' copyrighted fabric designs results in a loss of the copyrights; and (3) that the plaintiffs have failed to establish a proper basis for the issuance of a preliminary injunction.

■ It is settled in copyright infringement cases that a preliminary injunction should issue when the plaintiff makes a prima facie showing that his copyright is valid and that the defendant has infringed. American Code Co., Inc. v. Bensinger, 2 Cir., 1922, 282 F. 829, 831, 835; Gerlach-Barklow Co. v. Morris & Bendien, Inc., 2 Cir., 1927, 23 F.2d 159, 163; Houghton Mifflin Co. v. Stackpole Sons, Inc., 2 Cir., 1939, 104 F.2d 306, 307; Trifari, Krussman & Fishel, Inc. v. Charel Co., Inc., D.C.S.D.N.Y. 1955, 134 F.Supp. 551, 554; Inge v. Twentieth Century-Fox Film Corp., D.C. S.D.N.Y., 143 F.Supp. 294, 299. Although plaintiffs in fact have shown that, unless afforded preliminary relief, they will suffer substantial and irreparable injury, no detailed proof of such irreparable harm is required on this motion. Rushton v. Vitale, 2 Cir., 1955, 218 F.2d 434, 436.

For the reasons set forth in this opinion, the court has concluded that the plaintiffs prima facie have validly copyrighted the designs in issue; that both defendants have infringed the copyrights by copying; that all of the defendants' contentions are lacking in merit; and, consequently, plaintiffs' motions for a preliminary injunction should be and hereby are, granted as to both defendants.

Plaintiffs' factual presentation of the economic background and commercial practices involved in this litigation is not controverted. Peter Pan—the registered owner of all the textile design copyrights utilized by its parent corporation—is a wholly owned subsidiary of Glass. Glass is a "style leader" converter, that is, a converter who originates new lines of designs, rather than producing "staple" goods which can be carried over from year to year.

In order to satisfy the demand by better women's apparel manufacturers for highly styled and novel materials, plaintiffs maintain a design department and send their representatives throughout the style centers of the world for the purpose of producing new and fashionable textiles. This emphasis on creating original, highly-styled designs requires the plaintiffs to produce a full line of new designs in all colors, although only a few of such designs become popular in any one selling season. To recoup the costs that are an inherent part of this mode of operation, the plaintiffs must necessarily charge a price that is substantially higher than that of a converter of finished printed textiles who "adopts" a successful design.

Plaintiffs charge that both defendants are in fact underselling them, and that Acadia is offering goods which bear the infringing designs at forty-two and one-half cents per yard, fifteen cents less than plaintiffs' price for the very same material. In addition to the loss of sales and profits, plaintiffs claim that a style leader's originality of design is quickly ended when the copyist's substantially cheaper fabric bearing the copied design becomes available for less expensive garments. Not only loss of good will, but also quick obsolescence of accumulated inventory results when a successful and exclusive design becomes common.

Defendants do not address themselves to the commercial practices alluded to above, except for one significant remark in the affidavit (para. 6) of George Cushing, "stylist and sales manager" of Acadia's dress fabrics department. He states that design "pirating" is very common in the industry—"copying of designs is as much a part of our industry as is the creating of those designs."

The well-known history of the struggle between "copyists," "pirates," "freebooters," and the design "originators" in the textile and allied industries has been described extensively. Note, Protection

for the Artistic Aspects of Articles of Utility, 72 Harv.L.R. 1520 (1959); Weikart, Design Piracy, 19 Indiana L.J. 235 (1944); Pogue, Borderland—Where Copyright and Design Patent Meet, 52 Mich.L.R. 33 (1953); Whitman, Preventing Design Piracy: A copyright Law for Industrial Designs, 41 A.B.A.J., 242 (1955); Note, Protection of Styles and Designs in the Garment Industry, 26 U. Cin.L.R. 86 (1957); Young, Freebooters in Fashions: The Need for a Copyright in Textile and Garment Designs, 9 AS CAP, Copyright Law Symposium 76 (1958). The Copyright Office itself has prepared an exhaustive compilation of material on the general problems raised by this litigation. Ringer, Bibliography on Design Protection, Copyright Office, Library of Congress (Wash.D.C.1955).

We come now to the questions (raised by Weiner) whether the plaintiffs have the requisite standing to bring the action against Weiner and whether Weiner is properly named as a defendant.

■ The uncontradicted facts are that Glass wholly owns its subsidiary, Peter Pan; that Glass is a style-leader converter of textiles, developing novel designs for the better women's apparel market; that the manufacturing and selling of these printed textiles are accomplished by Glass, the parent corporation; that the two designs (Byzantium and Grecian Glory) were created by Pierre Kittler Studio, Paris, France, and were sold to Peter Pan, who registered them with the Register of Copyrights and who now holds the copyrights; and that Peter Pan is utilized by Glass to protect the names under which the goods are advertised and sold.

In light of the foregoing facts, Weiner argues that Glass has "no right, title or interest in the copyright in suit and consequently has no right to sue for the relief sought" and "in view of the all-inclusive activities of Henry Glass & Co. with regard to the subject fabric, no room appears to be left to Peter Pan Fabrics, Inc." This argument is specious. The statute (17 U.S.C.A. § 9) empowers "The author *or proprietor* of

any work made the subject of copyright by this title" to obtain a copyright. (Emphasis supplied.) The Registration Certificates of Copyright ("prima facie evidence of the facts stated therein," 17 U.S.C.A. § 209) for the copyrights before the court, as well as plaintiffs' statements, establish that the proprietor of the copyrights is Peter Pan. For purposes of the pending motions Peter Pan is prima facie the proprietor of the copyrights and, as such, is a "party aggrieved" with standing to sue for injunctive relief (17 U.S.C.A. § 112).

It is proper for a wholly owned corporate subsidiary to be the proprietor of a copyright, while its corporate parent causes the original work of art to be reproduced, published and copyrighted. The legitimacy of such an intercorporate arrangement is indicated by 17 U.S.C.A. § 26 (in defining the term "the date of publication") which envisages that publication may be made by the copyright proprietor or by another "under his authority." Cf. 17 U.S.C.A. § 10. Indubitably, a corporation may be a "proprietor" within the meaning of 17 U.S.C.A. § 9. See National Cloak & Suit Co. v. Kaufman, C.C.Pa.1911, 189 F. 215, 217; Edward Thompson Co. v. American Law Book Co., C.C.S.D.N.Y.1902, 119 F. 217, 219; Schumacher v. Schwencke, C.C.S.D. N.Y.1885, 25 F. 466, 468.

The joinder of Glass as a co-plaintiff may represent justifiable caution, inasmuch as the Federal Rules of Civil Procedure may require Glass's presence in this litigation if the ultimate proofs establish that Glass is "the real party in interest" [Rule 17(a)], 28 U.S.C.A., or that Glass has "a joint interest" sufficient to require a "necessary joinder" [Rule 19(a)].

Moreover, the trial evidence may show that Glass's relation to the copyrights gives rise to an "equitable interest" or an equitable ownership. The equitable owner of a copyright is properly joined as a party plaintiff. Edward B. Marks Music Corporation v. Jerry Vogel Music Co., Inc., 2 Cir., 1944, 140 F.2d 268, 269–270; Alexander v. Irving Trust Co., D.C.

S.D.N.Y.1955, 132 F.Supp. 364, 369, affirmed 2 Cir., 1955, 228 F.2d 221, certiorari denied 1956, 350 U.S. 996, 76 S.Ct. 545, 100 L.Ed. 860; 18 C.J.S. Copyright and Literary Property § 125, page 239.

Weiner failed to utilize the opportunity to squarely raise the issue of misjoinder either by a cross-motion (F.R.C.P., Rule 21), *or by pleading* [F.R.C.P., Rule 9 (a)]. Had the issue been raised directly, plaintiffs would then be in a position to present whatever facts it possessed to delineate Glass's interest in the subject-matter of this litigation.

If it should appear upon the trial that Glass has no interest whatsoever in the proceedings, the defendants have a remedy (F.R.Civ.P., Rule 21). On the present record and for purposes of the motions at bar, the court concludes that Glass is a proper party plaintiff.

■ Equally baseless is defendant Weiner's assertion that it (Martin Weiner Corp.) "has nothing whatsoever to do with the accused fabric" but that the allegedly infringing material had been sold by Weiner's successor, a firm known as Regency Textiles, Inc. (hereinafter "Regency") and not named as a defendant.

The purchaser of the accused fabric was Princess Junior, Inc. In support of Weiner's contention that the sale was made by Regency and not by Weiner, Weiner, has submitted a photostat of an invoice of Regency to "Princess Jr. Inc." (dated November 17, 1958) with the notations "Cotton" and pattern "3450" for four yards of fabric. Weiner further represents that its converting business had been transferred to Regency prior to the alleged infringing sale.

The cumulative proof points, however, to the conclusion that Weiner was substantially connected with the infringing transaction and the course of conduct sought to be enjoined. The evidentiary items requiring that conclusion are: (1) Pattern "3450," one of the notations appearing on the November 17, 1958 invoice to Princess Junior, Inc., corresponds precisely with the same pattern number appearing on the offending design (Plaintiffs' Exhibit "2" annexed to the complaint), to which is attached a pin ticket marked "Martin Weiner Co., 1441 Broadway." November 17, 1958 is the date on which plaintiffs obtained said plaintiffs' Exhibit "2"; (2) Martin Weiner is the president of both the defendant corporation and Regency; (3) the defendant corporation owns seventy percent of Regency's stock, the ownership of the balance of thirty percent is not disclosed by defendant; (4) both Regency and Weiner are located at 1441 Broadway, New York, N. Y. and have the same telephone number, Ox. 5–3370; (5) upon the oral argument defense counsel handed up to the court the dress that is photographed in defendant's Exhibit "3." This dress, the alleged inspiration of defendant's design, was contained in a large manila clasp envelope on which was printed: "Martin Weiner Company Manufacturers of Printed Textiles 1441 Broadway New York 18, N.Y."; (6) the letter of response to plaintiffs' notice of infringement was written on the letterhead of Martin Weiner Corp.; (7) the letter itself—dated December 4, 1958, two months after the alleged transfer of the Weiner converting business to Regency—states " * * * we prepared our design many months ago * * *," makes no mention of any corporation other than the defendant corporation, and does not disclaim responsibility for the accused design; (8) in his affidavit, Regency's sales manager, Jacob A. Konners, refers to Weiner as "an affiliated company"; (9) Martin Weiner's affidavit states that the final transaction in the transfer of defendant's converting business to Regency was the transfer of leases, "effective October 1, 1958." The affidavit does not disclose when in fact the last transfer occurred, assuming it was "effective" as of October 1, 1958; and (10) there is no proof of any announcement or notice to the public or to the trade of the alleged transfer.

If there was a transfer, the proofs now before the court would warrant the finding that, so far as this motion is concerned, it was essentially a bookkeeping

transaction within the Martin Weiner corporate family, and that there was a substantial and continuing connection between defendant Weiner and the printed fabric that infringes plaintiffs' copyright.

Moreover, once infringement of a valid copyright is found, persons who have contributorily infringed may be caught in the net of liability. "The author, the printer, the publisher, and all other persons who unite in an infringement are liable for the damages resulting from the infringement." Ball, The Law of Copyright and Literary Property, at page 333. It is only suggested that the proofs here do not exclude the possibility that Weiner may be in such a relationship with Regency that it may be liable as a "contributory infringer," even though *arguendo* Regency made the infringing sale.

In view of the foregoing, it must be concluded that Martin Weiner is a proper party defendant.

Plaintiffs have satisfied all statutory requirements and their copyrights are prima facie valid. In the motion passed upon by Judge Bryan (supra, at page 295 of 173 F.Supp.), Judge Bryan found (Finding No. 2) that Byzantium was a reproduction of an original work of art. In the motion decided by Judge Dimock (supra, at page 295 of 173 F. Supp.; Peter Pan Fabrics, Inc. v. Brenda Fabrics, Inc., D.C.S.D.N.Y.1959, 169 F. Supp. 142), the defendant therein did not deny "that plaintiffs' design is original."

In the case at bar, Acadia's answer to the complaint pleads the affirmative defenses that plaintiffs' copyrights are "invalid and void" because the underlying works of art lack originality and the designs were in the public domain. Acadia's opposing affidavit asserts: "The plaintiffs' fabrics and ours arise from the common source of the designs—Grecian type of architecture put to use repeatedly in the past. * * * The statement that the plaintiffs' designs are highly original is equally untrue, for Grecian type designs have been a part

of the art world and textiles for centuries."

Plaintiffs have described how the two designs were created and prepared for them by the Pierre Kittler Studio in Paris, France. The copyrights were applied for and classified as "Reproductions of a work of art." 17 U.S.C.A. § 5(h).

The statutory notice of copyright (17 U.S.C.A. § 19) "Copyright Peter Pan Fabrics Inc.," is imprinted on the selvage every sixteen inches, that is, at least once for every repeat of the design (17 U.S. C.A. § 10). This copyright notice is printed in black on a white background, about one-sixteenth of an inch from the nearest edge of the printed design. The notice is about two and one-half inches in length; the white background is about two and eleven-sixteenths inches in length.

The copyrighted designs are highly intricate and detailed both in over-all pattern and particular features. There is nothing in the record to impeach plaintiffs' representations that the two designs, Byzantium and Grecian Glory, are "original" expressions of characteristic Byzantine and Greek motifs and artifacts.

Where, as here, the designs reflect creative originality and a substantial degree of skill, labor and independent judgment, they are proper subjects for copyright. See Mazer v. Stein, 1947, 347 U.S. 201, 214, 217–218, 74 S.Ct. 460, 98 L.Ed. 630; American Code Co., Inc. v. Bensinger, supra, 282 F. 834.

The "originality" requirement for copyrightability is not onerous. In Alfred Bell & Co. v. Catalda Fine Arts, Inc., 2 Cir., 1951, 191 F.2d 99, 102–103, Judge Frank, for a unanimous court, said:

"It is clear, then, that nothing in the Constitution commands that copyrighted matter be strikingly unique or novel. Accordingly, we were not ignoring the Constitution when we stated that a 'copy of something in the public domain' will support a copyright if it is a 'distin-

guishable variation'; or when we rejected the contention that 'like a patent, a copyrighted work must be not only original, but new', adding, 'That is not * * * the law as is obvious in the case of maps or compendia, where later works will necessarily be anticipated.' All that is needed to satisfy both the Constitution and the statute is that the 'author' contributed something more than a 'merely trivial' variation, something recognizably 'his own.' Originality in this context 'means little more than a prohibition of actual copying.'"

Fred Fisher, Inc. v. Dillingham, D.C.S.D. N.Y.1924, 298 F. 145, 149–152; Gerlach-Barklow Co. v. Morris & Bendien, Inc., supra, 23 F.2d at page 161; Alfred Bell & Co. v. Catalda Fine Arts, Inc., supra. Cf. Trifari, Krussman & Fishel, Inc. v. Charel Co., supra, 134 F.Supp. at page 553; Yankwich, Legal Protection of Ideas—A Judge's Approach, 43 Va.L.R. 375, 379 (1957).

▇▇ That defendant Acadia has copied both Byzantium [1] and Grecian Glory and that defendant Weiner has copied Byzantium are findings compelled by the evidence, particularly the physical exhibits of the plaintiffs; and the defendants' printed fabrics.

The copying by Acadia of both designs is incontrovertibly established by a mere inspection and comparison of plaintiffs' fabrics (Exhibits "1" and "3" annexed to the complaint) and Acadia's fabrics (Exhibits "2" and "4" annexed to the complaint). Acadia has virtually made a "Chinese copy" of plaintiffs' designs. Such appropriation constitutes "copying" under any judicial formulation of that term.

The copying of Byzantium by defendant Weiner was achieved—though not concealed—by a different technique. A cursory comparison of the plaintiffs' and Weiner's fabrics immediately evokes a striking impression that the two designs are identical. Closer scrutiny reveals that each minor detail of plaintiffs' design has been altered in Weiner's copy. It is as if the composition and design of a mosaic were slavishly adhered to while the size and shape of each individual tile have been somewhat altered.

▇▇ Graphic plagiarism is committed when the copyist preserves the structural and material characteristics of the original, notwithstanding deliberate and systematic variation of each subordinate detail. In the present case, plaintiffs' design is the prototype, defendant's the counterfeit.[2]

1. The basic composition of Byzantium is that of varying sizes of sections or blocks, each fitted into an over-all pattern without overlapping of the individual sections or blocks. Each section or block represents a separate design, harmonious with the pervasive Middle Eastern or Byzantine motif and mood of the pattern. Suggestive of Byzantine architecture are several variations of ornamented rounded arches. Other sections employ the ornamentation of a modified arabesque and interlacing lines forming geometric patterns. Facsimiles of Arabic script and symbols derived from Arabic script serve as ornamentation. The border of each section is ornamented. These ornamentations vary in style, but a common one consists of a string of shapes resembling a fleur-de-lis.

2. The basic structure of plaintiffs' Byzantium consists of rectangular or polygonal blocks or sections having a certain spatial relationship to each other in terms of their juxtaposition and sequence. The dimensions in width of both plaintiffs' and Weiner's sections are the same. Although, in some instances, the length of the individual sections are not the same, where Weiner has shortened one section, another section is elongated in order to retain the basic dimensions of plaintiffs' over-all pattern.

Additional telltale evidence is Weiner's treatment of the designs within each of the sections. For example, where plaintiffs use a rounded arch, Weiner's structure at first glance looks the same, but, on closer inspection, it appears that the cursive line of the crown of the arch has been made semi-polygonal. Where plaintiffs' section employs the design of interlocking parallelograms, Weiner employs interlocking ellipses. The composition of plaintiffs' ornamented borders

A preliminary injunction will lie only if defendants' acts constitute copying within the meaning of the copyright laws. The gravamen of the tort of copyright infringement is copying. (Admur, Copyright Law and Practice, p. 650); "absent copying there can be no infringement of copyright." Mazer v. Stein, supra, 347 U.S. at page 218, 74 S. Ct. at page 471.

There is no statutory definition of "copying." It is a word of elastic meaning. Annotation, Literary or Artistic Property Rights, 1952, 23 A.L.R.2d 244, 337–339. The term has been variously formulated as follows: "A copy is that which ordinary observation would cause to be recognized as having been taken from [the work of another]." King Features Syndicate v. Fleischer, 2 Cir., 1924, 299 F. 533, 535 (Cartoons). "Paraphrasing or copying with evasion is an infringement, even though there may be little. or no conceivable identity between the two." Nutt v. National Institute Incorporated for the Improvement of Memory, 2 Cir., 1929, 31 F.2d 236, 237 (Series of Lectures). "* * * plaintiff established a strong prima facie showing of copying by pointing out a convincing number of similarities in style, appearance, and selection [of roads and towns]." General Drafting Co., Inc. v. Andrews, 2 Cir., 1930, 37 F.2d 54, 56 (Maps). "* * * a substantial similarity in the effect" Comptone Company v. Rayex Corporation, 2 Cir., 1958, 251 F.2d 487, 488 (Advertisement). "A finding of infringement requires only that the two pins be observably similar." Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., supra, 144 F.Supp. at page 579 (Costume Jewelry). "A work may be said to have been copied if ordinary observation would recognize it as having been appropriated from, or patterned after, the copyrighted work." Admur, supra, at pages 656–657; 18 C.J.S. Copyright and Literary Property § 94, pages 215–218; Ball, The Law of Copyright and Literary Property, pages 339–340. Cf. Yankwich, supra, at pages 379–381.

Viewed in the light of the foregoing authorities, the evidence conclusively proves that the defendants copied plaintiffs' copyrighted reproductions of works of art.[3]

is retained, but where plaintiffs' decorations are triangular, Weiner's are semicircular. A straight diagonal in plaintiffs' design is replaced by a curved one. Additional illustrations of this plagiaristic paraphrasing are contained in Weiner's Exhibit "2," a side-by-side presentation of fifteen separate comparable sections of plaintiffs' and Weiner's fabrics.

Byzantine art, with its thousand-year history, is a vast storehouse of motifs and ornamentations, ranging from illuminated manuscripts to mosaics and architecture. See, e. g., Grabar, Byzantine Painting (Skira); Encyclopedia Britannica, Byzantine Art (11th Ed.) pp. 906 ff. Particular Byzantine-like motifs, of specific dimensions and definite interlocking spatial and structural relationships, are the elements of plaintiffs' design. Out of the untold number of available Byzantine motifs, Weiner has selected as its model plaintiffs' Byzantine-like motifs and plaintiffs' treatment of those motifs.

The physical facts of copying become virtually incontestable in the light of (A) defendant Acadia's sworn admission that it had examined a dress made of plaintiffs' designed fabrics and "after some minor changes, ordered rollers"; and (B) defendant Weiner's sworn admission that its designer prepared the infringing pattern while having actually "before him" a dress made of plaintiffs' copyrighted pattern. This constitutes copying. See Falk v. Donaldson, C.C. S.D.N.Y.1893, 57 F. 32, 35, 36; Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., D.C.S.D.N.Y.1956, 144 F. Supp. 577, 579.

3. Defendant Weiner's appropriation of the arrangement, features, underlying structure and visual impact of the plaintiffs' design, is analogous to the improper use made of copyrighted advertisements. A successful advertisement depends upon its over-all visual impact and its structural relationships, rather than upon its individual components or details. Copyrighted advertisements have been protected against an infringer who has violated the copyright by producing an advertisement which was substantially similar in "the effect obtained." Comptone Company v. Rayex Corp., supra, 251 F.2d

Chief reliance is placed by defendants upon the proposition that, assuming *arguendo* they copied, the model for their plagiarism did not bear any notice of copyright. Upon this proposition, defendants erect a structure of three arguments:

(1) That the infringement was innocent;

(2) That plaintiffs have not satisfied the statutory requirements for obtaining a valid copyright because absence of the notice of copyright from the finished garments proves that plaintiffs have not affixed the requisite notice to their designs;

(3) That any copyright, if validly obtained, was forfeited or lost because subsequent users of plaintiffs' fabrics, i. e., dress manufacturers, invariably remove the copyright notice from the fabrics in making a dress; and thus "copies" of the plaintiffs' copyrighted works were published in the form of dresses without the requisite notice of copyright.

These defense contentions, which will be considered seriatim, are without merit.

The contention—that the model for the defendants' copy did not bear the requisite notice and therefore the defendants were "innocent infringers"—is legally insufficient and does not bar the requested injunctive relief. An infringer of a valid copyright copies at his peril; intent to infringe is not essential. Buck v. Jewell-La Salle Realty Company, 1931, 283 U.S. 191, 198, 51 S. Ct. 410, 75 L.Ed. 971; Barry v. Hughes, 2 Cir., 1939, 103 F.2d 427, certiorari denied 1939, 308 U.S. 604, 60 S.Ct. 141, 84 L.Ed. 505; Chappell & Co., Inc. v. Costa, D.C.S.D.N.Y.1942, 45 F.Supp. 554, 555. While differences of opinion may arise as to whether damages should be awarded against an innocent infringer, the propriety of granting a preliminary injunction has not been questioned. Acosta v. Brown, D.C.S.D.N.Y.1943, 50 F. Supp. 615, 617, affirmed De Acosta v. Brown, 2 Cir., 146 F.2d 408, 410, certiorari denied Hearst Magazine v. De Acosta, 1944, 325 U.S. 862, 65 S.Ct. 1197, 89 L.Ed. 1983. In some of the decisions cited in Costa, supra, preliminary injunctive relief was awarded on the basis of facts closely resembling those now before the court.[4]

at page 488; Ansehl v. Puritan Pharmaceutical Co., 8 Cir., 1932, 61 F.2d 131, 137–138. An even closer analogy is the plagiarizing of a copyrighted literary work by a paraphrase that avoids copying the exact words. See Anderson v. Baldwin Law Pub. Co., 6 Cir., 1928, 27 F. 2d 82, 88; Nutt v. National Institute Incorporated for the Improvement of Memory, supra, 31 F.2d at page 239; Ansehl v. Puritan Pharmaceutical Co., supra, 61 F.2d at page 138; Admur, supra, at pp. 658–660; Ball, supra, at p. 359.

4. Lack of knowledge on the part of the infringer, sometimes attributable to the fact that the model for the infringing copy was without the statutory notice of copyright because an intermediate party removed the notice affixed by the copyright holder, has been held to be immaterial.

In Falk v. Gast Lith. & Eng. Co., C.C. S.D.N.Y.1889, 40 F. 168, Judge Lacombe granted a preliminary injunction against defendant's infringement of plaintiff's copyrighted photograph of Julia Marlowe.

Plaintiff's affidavit proved prima facie that the statutory requirement of notice on each copy of the photograph was satisfied. Defendant's averments that the offending copy was produced from a photograph of Julia Marlowe that did not bear the required notice, without proof that plaintiff had produced the model in the condition in which defendant saw it, was held insufficient to overcome plaintiff's prima facie showing.

After final hearing of the action (C.C. S.D.N.Y.1891, 48 F. 262), Judge Coxe found for the plaintiff. Defendant renewed his defense that plaintiff had failed to satisfy the statutory notice requirement and that the photograph copied did not bear a copyright notice.

Judge Coxe said (at page 263):
"The difficulty with the defendant's testimony is that it may be true *and still the complainant, in all respects, may have complied with the statute*. In other words it is not enough to show that the photograph was without the statutory notice when it entered the defendant's pos-

With respect to defendants' second contention—that plaintiffs have not proved prima facie that publication was made with statutory notice—the court finds that plaintiffs' allegations of compliance with the statute are supported not only by the certificate of copyright but also by plaintiffs' and defendants' exhibits.

Defendants' third contention is one of novel impression: that plaintiffs' copyright is forfeited because the notice of copyright imprinted on the selvage of the printed fabric is invariably removed by plaintiffs' customers, the dress manufacturers, who cut off the selvage when the fabric is made into dresses; and that such forfeiture is not avoided by the circumstance that the notice of copyright appears on the selvage at each repeat of the design when the fabric (including the selvage) is sold by plaintiffs to their customers.[5]

> session. *It must appear that it was without the notice when it left the complainant's possession.* There is no evidence to show this. *If copied afterwards or put upon a new mount the complainant should not suffer.*" (Emphasis supplied.)

In affirming, the court said (2 Cir., 1893, 54 F. 890, 893):

> "If the proper statutory notice of copyright was upon each copy as it left the control and ownership of the proprietor of the copyright, he cannot be responsible for any changes which were afterwards improvidently made upon a particular copy before it came into the hands of the last purchaser."

Edison v. Lubin, 3 Cir., 1903, 122 F. 240, appeal dismissed, 1904, 195 U.S. 625, 25 S.Ct. 790, 49 L.Ed. 349, granted preliminary injunctive relief in an infringement action which involved an early copyright of a motion picture. The copyright notice had been placed on one end of the film, but one-third of the film (from the end without the notice) came into the hands of the infringer. He had no knowledge of the copyright, and the portion of the film he had did not bear any notice of copyright. The court ordered a decree for plaintiff. Implicit in the court's determination is that an injunction will lie against an infringer who copies from a copyrighted work that does not bear the required notice and who is without knowledge of the fact that the work had been copyrighted.

In Altman v. New Haven Union Co., D.C.D.Conn.1918, 254 F. 113, the district court granted *inter alia* injunctive relief against infringement of a copyrighted photograph. As originally published, the photograph bore the requisite copyright notice, but in cutting down the size of the photograph without plaintiff's permission, the notice was removed. This reduced-in-size photograph, admittedly without any notice of copyright, was published by the defendant. Finding the publication was "innocent," the court nontheless granted an injunction.

In Gerlach-Barklow Co. v. Morris & Bendien Inc., 2 Cir., 1927, 23 F.2d 159, a photograph of an original work of art was copyrighted by plaintiff and was infringed by defendant's photograph that closely resembled the plaintiff's. To prove that plaintiff had failed to comply with the notice requirement and that the defendant's copy had been made without any knowledge of plaintiff's copyright, defendant introduced five copies of a photograph, presumably plaintiff's; none of the five bore the statutory notice. In upholding the preliminary injunction order, Judge Swan said (at page 162):

> "It is not enough to show that the picture was without the statutory notice *when it came into the defendant's* possession; it must appear that it left the plaintiff's possession in that condition."

5. Neither in its answer nor opposing affidavit does defendant Acadia raise the issue of copyright forfeiture based upon the alleged removal of the copyright notice from the fabric when it is made into the finished garments. However, in its opposing memorandum of law (pp. 7–8), Acadia argues that plaintiffs have lost their copyright protection because they sold their designs "without providing for the copyright notice to be brought to the attention of the public"; secondly, because there is no copyright notice "anywhere" in the garments which were on the market; and, thirdly, "Even if the copyright notice is on the goods in the garment, if that notice is permanently covered so that it cannot be seen without tearing the garment apart, plaintiffs are not protected."

Defendant Weiner has submitted the opposing affidavit of its sales manager, which recites: "There was no copyright notice on the dress [made of plaintiffs' fabric which was copied] * * *."

Defendants have submitted to the court three dresses made from plaintiffs' printed fabrics and bearing their copyrighted designs. One of the two dresses submitted by Acadia is made of fabric containing plaintiffs' Byzantium design, the fabric in the other contains plaintiffs' Grecian Glory design. Neither of these two dresses bears a visible copyright notice. However, when the seams of the dress containing the Byzantium design are opened, the copyright notice appears in three separate places on the retained selvage, which had been sewn into closed seams. In the case of the dress made of plaintiffs' Grecian Glory fabric, the selvage (and, therefore, the copyright notice) had been removed.

The third dress, submitted by Weiner, when turned inside out, plainly discloses two copyright notices in the front seam, which is open and consists of two selvage edges.

■ In sum, the exhibits themselves show that selvage may or may not be removed by the dress manufacturer.[6] This requires a rejection of the suggestion that the court should take judicial notice of an alleged custom that selvage is invariably removed from the fabric by the dress manufacturer. Cf. IX Wigmore, Evidence (3rd ed. 1940) section 2571(3) at p. 548.

■ Plaintiffs, having established that they have valid copyrights and that the defendants infringed by copying, "the burden of proof upon the issue of invalidation" rests upon defendants. Modern Aids, Inc. v. R. H. Macy & Co., Inc., 2 Cir., 1959, 264 F.2d 93. Defendants have failed to sustain that *onus probandi*.[7]

■ All the evidence points to the incontrovertible fact that when the printed fabric leaves the plaintiffs' hands it contains the requisite copyright notice. Plaintiffs have done all that they reasonably could do to comply with the statute. Plaintiffs cannot be charged, as a matter of fact or law, with knowledge that the copyright notice on the selvage will be removed or concealed by the dress manufacturer.[8]

That one dress manufacturer trimmed the selvage (and the copyright notice thereon) from the plaintiffs' fabric when he manufactured the garment, and that another manufacturer sewed the selvage into a closed seam, is not conduct chargeable to plaintiffs. If *arguendo* plaintiffs were to be charged with such conduct,

---

Weiner's opposing memorandum of law (Points IV and V) argues that plaintiffs' copyright is "invalid" because: "It is common knowledge, of which the court may take judicial notice, that dress manufacturers do not make a practice of saving the selvage and incorporating it in a conspicuous location into the dresses which they manufacture. In short, although a selvage is an integral part of a piece of cloth, it is intended to be and almost invariably is detached from the cloth when the cloth is put into the form in which it is ultimately sold and used."

6. Such common knowledge as comes within the judicial ken would indicate that whether or not selvage is removed by the dress manufacturer depends upon the style of the dress (fitted or straight lines) and the price of the dress (the desire of the manufacturer to save material).

7. In a related context Gerlach, supra, 23 F.2d at page 162, describes the defendants' burden of proof:
"It is not enough to show that the picture was without the statutory notice when it came into the defendant's possession; it must appear that it left the plaintiff's possession in that condition. Falk v. Gast Lith. & Eng. Co., 2 Cir., 54 F. 890." Cf. Weil, American Copyright Law, at pp. 349–350.

8. A notice of copyright that has been permanently covered so that it cannot be seen without tearing the article apart is considered a defective notice by the Copyright Office. Rules and Regulations, 37 C.F.R. section 202.2(b) (9) (Amendment of Oct. 17, 1958). See 17 U.S. C.A. § 19. Cf. Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., D.C.S.D.N.Y.1956, 144 F.Supp. 577, 582.

the policy underlying Title 17 U.S.C.A. § 21 would protect plaintiffs' rights.[9]

The requirement that the notice of copyright "shall be affixed to each copy" of the copyrighted work "published or offered for sale in the United States by authority of the copyright proprietor" is contained in Title 17 U.S.C.A. § 10. This statutory requirement should be given a realistic interpretation, consonant with business practices, that will reasonably protect both the copyright owner and an innocent copyist.[10]

Accordingly, where the copyrighted work is a repetitive design, imprinted on a sheet or continuous strip or roll of material, and when the notice is imprinted at least once for every repeat of the design on the edge of such material, the copyrightee, having done all that is reasonably within his power to imprint the notice on the material without marring the appearance of the work, has satisfied the notice requirements of section 10. Any subsequent removal, destruction or obliteration of the notice by others may serve to mitigate the relief awarded against an "innocent" infringer, without resulting in a loss forever of the rights given by the copyright.

Defendants' claim—that the facts herein establish a forfeiture of plaintiffs' copyrights—is unsupported by precedent or the cases cited by defendants.[11]

9. Section 21 of Title 17 U.S.C.A., provides:
"Where the copyright proprietor has sought to comply with the provisions of this title with respect to notice, the omission by accident or mistake of the prescribed notice from a particular copy or copies shall not invalidate the copyright * * *."
See Gerlach, supra, 23 F.2d at page 163; Strauss v. Penn Printing & Publishing Co., D.C.E.D.Pa.1915, 220 F. 977. Cf. Kramer Jewelry Creations, Inc. v. Capri Jewelry, Inc., D.C.S.D.N.Y.1956, 143 F.Supp. 120, 122; Christie v. Raddock, D.C.S.D.N.Y.1959, 169 F.Supp. 48, 50.

10. The doctrinal trend is to construe the statute liberally. Washingtonian Publishing Co. v. Pearson, 1939, 306 U.S. 30, 36, 59 S.Ct. 397, 83 L.Ed. 470; Basevi v. Edward O'Toole Co., D.C.S.D.N.Y.1939, 26 F.Supp. 41, 47; Baron v. Leo Feist, Inc., D.C.S.D.N.Y.1948, 78 F.Supp. 686, 692, and cases there cited, affirmed 2 Cir., 1949, 173 F.2d 288.
"The purpose of requiring that a copyright notice be affixed to the article is to advise the public of the claim of the copyright proprietor and to prevent innocent persons, unaware of the copyright, from incurring infringement penalties." Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., supra, 144 F.Supp. at page 580. And see American Tobacco Co. v. Werckmeister, 1907, 207 U.S. 284, 294, 28 S.Ct. 72, 52 L.Ed. 208; Ball, supra, section 68, at p. 156.
The requirement of a copyright notice is the subject of a penetrating study prepared for the United States Copyright Office by Vincent A. Doyle, George D. Cary, Marjorie McCannon, and Barbara A. Ringer. General Revision Of The Copyright Law, Study No. 6, "Notice of Copyright" (1958). See esp. pp. 23–24, with reference to the problem at bar.

11. Sharply distinguishable from the case at bar is Verney Corporation v. Rose Fabric Converters Corp., D.C.S.D.N.Y. 1949, 87 F.Supp. 802, at page 803, where the court found: "There is no showing by plaintiff that there was any copyright notice upon each repetition of the design."
Neither is Trifari, Krussman & Fishel, Inc. v. B. Steinberg-Kaslo Co., supra, in point. The touchstone of that decision was that a copyright notice printed on small tags attached to a piece of costume jewelry does not satisfy the statutory requirement that the notice be on the copyrighted work. 17 U.S.C.A. § 19. That the use of labels to be attached to the manufactured garments may itself give rise to a separate class of problems, see Forstmann Woolen Co. v. Murray Sices Corp., D.C.S.D.N.Y.1956, 144 F.Supp. 283. Cf. Rules and Regulations, 37 C.F.R. section 202.2(b) (11) [Amend. Oct. 17, 1958].
Dejonge & Co. v. Breuker & Kessler Company, 1914, 235 U.S. 33, 35 S.Ct. 6, 59 L.Ed. 113, is another illustration of a copyright owner's failure to print the statutory notice on each repeat of a design. The design, consisting of a small Christmas floral pattern, was printed on sheets or rolls of wrapping paper, twelve repetitions in a strip, bounded on each side by the same pattern. Only the "strip," or one in twelve repeats of the design, bore a notice of copyright. Failure to print the requisite notice on each

The congeries of operative facts in this case includes the following:

(1) The plaintiff-copyright owners placed the required copyright notice on each published (i. e., sold by them) copy of the design imprinted on the textile fabric.

(2) The copyright owners printed the copyright notice on each repeat of the design.

(3) The subsequent removal or concealment of the copyright notice where such removal or concealment occurred, was effected by an independent vendee over whom the copyright owners had no control or authority—and not by a licensee or agent or other person in express or implied privity with the copyright owners.

There is considerable doubt whether, within the meaning of Title 17 U.S.C.A.

repeat of the design was held to be fatal to the copyright. Dejonge is far afield from the present case, where the statutory notice was imprinted alongside each repeat of the design.

While the statutory notice requirements are a snare for the unwary (Halliday, Losing Copyrights Under the Law of the United States, 35 J.P.O.S. 343 [1953]; Doyle, et al., Notice of Copyright, General Revision of the Copyright Law, Study No. 6, supra, at pp. 10–23), the courts have been liberal in saving the copyright where the deviation from the notice requirements (17 U.S.C.A. § 19) has been formal and not substantial. See National Comics Publications v. Fawcett Publications, 2 Cir., 1951, 191 F.2d 594, 602, opinion clarified 198 F.2d 927.

In National Comics, supra, the subsequent publication of the copyrighted comic strips with defective or omitted copyright notices, was by a "licensee" of the copyright owner; the licensee had been given the right to reproduce the copyrighted work as such. See also the

§ 10, the transformation of the copyright owners' fabric into a new and independent product, i. e., a garment, by the dress manufacturer makes the finished garment a "copy" of the copyrighted design and makes the subsequent sale by the dress manufacturer a "publication" of the copyrighted work.[12]

The court concludes that plaintiffs did not forfeit their copyrights.

Plaintiffs are entitled to a preliminary injunction against both defendants. Plaintiffs will suffer irreparable injury if a preliminary injunction is not issued.

The plaintiffs' motions are granted. Settle order on notice, in accordance with F.R.C.P. rule 65(d). The findings and conclusions required by F.R.C.P. rule 52 (a) are contained in this opinion. Plaintiffs must furnish security in the amount of $5,000 to each defendant.

advertising material cases, e. g., Wilkes-Barre Record Co. v. Standard Advertising Co., 3 Cir., 1933, 63 F.2d 99; Deward & Rich v. Bristol Savings & Loan Corporation, 4 Cir., 1941, 120 F.2d 537.

12. Assuming, arguendo, that the sale of the finished dress constitutes a "publication" of a "copy" of the copyrighted work, this act would not be binding upon the plaintiff-copyright owners in the light of operative fact "3," supra.

A recent promulgation of the Copyright Office contemplates the copyright of a design for textiles. Rules & Regulations, section 202.10(b), of 37 C.F.P. (as amended to October 17, 1958) relevantly provides:

"* * * The registrability of a work of art is not affected by * * * the fact that it appears on a textile material or textile product. * * *"

The court rejects defendants' nice-spun argumentation that would vicariously jeopardize the substantial rights granted to the copyright owners.